## **AFFIDAVIT**

I, Richard C. Bernecker, a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), being duly sworn, depose and state as follows:

1. I am a TFO with DEA in the Cincinnati Resident Office (RO) and have been since August 2012. Prior to my assignment as a Task Force Officer, I was a Patrolman and Detective at the Colerain Police Department. I have been employed as a police officer for eighteen (18) years. As a Task Force Officer with the DEA, my duties have included the investigations of violations of federal laws concerning the importation, manufacture, possession, and distribution of controlled substances as defined by Title 21, United Stated Code, including controlled substances such as heroin, cocaine, methamphetamine, and other dangerous drugs. During my tenure as a police officer, I have participated in numerous investigations involving drug trafficking and have attended numerous specialized training schools conducted by the DEA and other law enforcement agencies. Some of the training I have attended includes: DEA Basic Investigators School, Operation Jet-way Training (training that is specialized to airplane, train, and bus interdiction), Interdiction Training and many more. I have participated in all aspects of drug investigations, including physical surveillance, undercover operations, execution of search warrants, interdictions, and arrests of drug traffickers.

2. I have learned through training and experience that drug traffickers and their couriers often fly on one-way tickets and usually do not make travel plans much in advance because they get last second information that the narcotics are ready or instructions and they have no idea how long the transaction will take.

3. This Affidavit sets forth the factual basis for the civil forfeiture of certain seized currency and is based on my personal investigation. It includes only the information necessary to provide a legal basis for civil forfeiture, not all information obtained during this investigation.

4. On July 29, 2024, agents from the DEA Cincinnati RO and detectives from the Cincinnati/Northern Kentucky Airport Police Department (Airport Police) received information that Jospeh Freeman was traveling from Cincinnati to Los Angeles on the following suspicious flight itinerary: he purchased a one-way ticket twenty-four hours prior to travel, and he was traveling to a known source city/state.

5. I responded to the departure gate for Freeman's flight on July 29, 2024, accompanied by TFOs Eli Sautter and Narcotic K-9 Airport Police Officer Nick Ruffing, to await the departure of the flight to Los Angeles. TFO Sautter identified Freeman when he scanned his ticket. Officer Ruffing identified himself as a police officer to Freeman and asked if we could speak to him. The consensual encounter took place in the entrance of the jet-way and Freeman was free to walk away at any time.

6. Officer Ruffing confirmed Freeman's identity through his Maryland driver's license. Officer Ruffing explained to Freeman that were part of an interdiction team looking for large sums of money and/or drugs related to narcotics trafficking. When asked if he had any of those items, Freeman did not respond. Officer Ruffing asked again, and Freeman stated that he had "some money," unzipped his handbag, and showed an unknown amount of loose currency in the handbag to Officer Ruffing. Officer Ruffing asked Freeman how much currency he was carrying, and Freeman indicated that he had "a couple grand."

7. When questioned about his purpose for travel, Freeman advised that he was visiting his wife who had been attending Galen College of Nursing for approximately one year. Officer Ruffing asked Freeman where he stayed during his time and Cincinnati, and Freeman stated that they had a residence in Liberty (i.e., Liberty Township, Ohio), but he did not know the address of the residence. Freeman indicated that he had traveled to Cincinnati a week earlier on Monday by vehicle. After further questioning regarding his travel, Freeman changed his story

and instead stated that he came to Cincinnati on Tuesday with his wife, children, and grandparents driving from Maryland.

8.  Officer Ruffing asked Freeman if Officer Ruffing and I could search his person and carry-on bag, and Freeman verbally consented to the searches. I searched Freeman's carry-on bag and located a black locked currency deposit bag. I asked Freeman if he had the key to unlock the deposit bag, and he indicated that he did not. I asked Freeman why he would carry a locked deposit bag without the key, and he stated, "This is how the bag was given to me and someone in Vegas will have the key." Freeman could not provide any information about the person who may have the key for the bag or the amount of currency in it.

9.  Officer Ruffing searched Freeman's person and located six white envelopes, each containing a large amount of U.S. currency, concealed in multiple pockets of his jacket. Officer Ruffing asked Freeman how much currency was inside the envelopes, but he did not respond. I then asked Freeman how much currency he was carrying in total, and he indicated that he did not know. When asked what the currency he was traveling with was for, Freeman merely stated, "business," but when asked what kind of business, he did not respond.

10. I questioned Freeman about the source of the currency, and he indicated that he pulled money from multiple banks and bitcoin. I then asked Freeman if he could provide the receipts from the withdrawals or any of his bank or financial statements for his accounts and activity, and he could not.

11. When asked if there was anything in his phone related to drug trafficking, Freeman stated there was not. Upon request, Freeman consented to a search of his Samsung cell phone but denied permission to search his iPhone. During my search of the Samsung phone, I located multiple photos and videos of marijuana along, a ledger listing numerous strains of marijuana, and other indicia of drug trafficking. Both cell phones were seized as evidence.

12. The black locked currency deposit bag and Freeman's checked luggage (once it was returned from Los Angeles via the airline to Cincinnati) also were seized, and a state search warrant later was obtained for them. The search of the currency deposit bag revealed four large bundles of U.S. currency concealed inside, which was seized. The search of the checked luggage revealed a box containing four jumbo "Magic Bag" vacuum-sealed bags, which also were seized.

13. In total, $60,000.00 in U.S. currency was discovered and seized from the envelopes discovered during the search of Freeman's person and $24,000.00 in U.S. currency was discovered and seized from the black locked currency deposit bag. Freeman was traveling alone and was the only person other than law enforcement present at the time of the search and seizure. After their seizure, the $60,000.00, black locked currency deposit bag, and Freeman's checked luggage each were examined by a drug-detecting dog, who showed a positive indication for narcotic odor thereon.

14. Several factors established probable cause to believe that the currency seized from Freeman's person and the currency deposit bag were proceeds of illegal drug trafficking or intended to be furnished in exchange for illegal drugs, including but not limited to the following:

    a. Freeman's travel to a known source city/state on a one-way airline ticket purchased one day prior;

    b. Freeman was traveling with a large amount of cash and a locked currency deposit bag for which he did not have a key;

    c. Freeman's initial, dishonest statements about the amount of currency with which he was traveling;

    d. Freeman's vague and unsupported explanations for the purpose of his travel and source of the seized currency;

    e. Evidence on Freeman's cell phones indicative of drug trafficking;

    f. The positive alert by a drug-detecting dog on the seized currency;

    g. Freeman was traveling with large vacuum-sealed bags in his luggage; and

    h. Freeman's history of drug-related criminal charges.

15. DEA commenced administrative forfeiture proceedings against the $60,000.00 and $24,000.00 in U.S. currency. On or about September 3, 2024, Joseph Freeman filed a claim to both amounts of seized currency in the administrative forfeiture proceeding, asserting that he was the owner of the currency.

16. Based on the information provided in this Affidavit, I believe that the seized currency was furnished or intended to be furnished in exchange for controlled substances, represents proceeds traceable to such an exchange, or was intended to be used to facilitate the illegal sale of narcotics and is, therefore, subject to seizure and forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6).

I declare under penalty of perjury, as provided by federal law, that the foregoing statements are true. Further your affiant sayeth naught on this the 22 day of November, 2024.

TFO *[signature]*
Richard C. Bernecker, Task Force Officer
Drug Enforcement Administration